# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| LARRY BROCKMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-CV-00032 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Larry Brockman's ("Brockman") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

### I. Background

Brockman applied for disability insurance benefits and supplemental security income benefits on August 14, 2013, alleging disability as of June 30, 2013, due to schizophrenia and bipolar disorder. After his application was denied at the initial administrative level, he requested a hearing before an administrative law judge ("ALJ"). Following a hearing on December 4, 2014, the ALJ issued a written decision on February 17, 2015, denying his application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brockman's request for review by the Appeals Council was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

**II.   Facts**

The Court adopts Brockman's Statement of Facts (Doc. No. 19-1). [2] The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

**III.   Standards**

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;

---

[2] Defendant has admitted all of Plaintiff's facts with the exception of ¶ 93 (Doc. No. 24-1). Contrary to Plaintiff's statement that he reported to his treating physician that he did not believe Seroquel worked, in the portion of the record cited, Plaintiff acknowledged Seroquel was helping, but not as much as he thought it should (Tr. 335).

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal

impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Disability claims based on mental disorders are evaluated in essentially the same manner as claims based on physical impairments. If the mental impairment is severe, the ALJ must determine whether it meets or equals any of the Listings. The Listings of mental impairments consist of three sets of "criteria"- the paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations), and paragraph C criteria (additional functional criteria applicable to certain Listings). The paragraph A criteria substantiate medically the presence of a particular mental disorder. The paragraphs B and C criteria describe the impairment-related functional limitations that are incompatible with the ability to perform SGA. There are four areas in which the ALJ rates the degree of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation (the "paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3). A claimant can satisfy the paragraph C criteria by showing: (1) extended episodes of decompensation; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (3) a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." 20 C.F.R. Pt. 404,

4

Subpt. P, App. 1, § 12.00(C). The paragraph C criteria are assessed only if the paragraph B criteria are not satisfied. If the claimant satisfies the A and B, or A and C criteria, he will be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); see also 20 C.F.R. 404.1520a (detailing evaluation of mental impairments).

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's RFC. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability,

however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

**Decision of the ALJ**

The ALJ found Brockman had the severe impairments of schizoaffective disorder, posttraumatic stress disorder (PTSD), and anxiety, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ found Brockman's impairments did not satisfy the criteria of either paragraph B or paragraph C. Specifically, Brockman has only mild restriction in activities of daily living, no more than moderate difficulties with social functioning and concentration, persistence, or pace, and no extended episodes of decompensation. (Tr. 16). The ALJ further noted that no treating, reviewing or examining medical source had opined that Brockman's mental symptoms are so severe as to satisfy the paragraph C criteria. (Id.).

After considering the entire record, the ALJ determined that Brockman had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine and repetitive tasks requiring no interaction with the public in performing job duties, occasional interaction with coworkers and supervisors, and occasional changes in the work setting. The ALJ found Brockman capable of performing his past relevant work as a packager, which did not require the performance of work-related activities precluded by his RFC. Thus, the ALJ found Brockman was not disabled as defined by the Act.

**IV. Discussion**

In his appeal of the Commissioner's decision, Brockman argues the ALJ: (1) failed to properly consider his severe impairments (Doc. No. 19 at 3-5; 11-12); (2) improperly evaluated

the medical opinion evidence (id. at 5-11); (3) improperly discredited the severity of his symptoms; and (4) failed to accurately hypothesize his work-related limitations to the vocational expert (id. at 12-15).

**(1) Severe impairments**

A social security claimant must establish disability "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ found Brockman's impairments to be severe in combination based on the hearing testimony and medical evidence, but that the medical evidence did not support a disabling medical condition that would preclude work for 12 months (Tr. 15). Brockman argues the ALJ "violated Social Security Ruling (SSR) 82-52 by failing to provide clear rationale regarding [his] restoration of function after determining that [he] did not have a medical condition that would preclude work for 12 months."[3] (Doc. No. 19 at 3-5).

The requirement of SSR 82-52 that the ALJ present a specific rationale for denying a closed period of disability applies only to cases of otherwise *disabled* claimants, which are "denied on the basis of *insufficient duration*" of the inability to engage in substantial gainful activity. SSR 82-52, 1982 WL 31376, at *1, *3 (1989) (emphasis added). In considering "duration," it is the inability to engage in substantial gainful employment because of the

---

[3] SSR 82-52 requires the ALJ to clearly state the basis for denial for insufficient duration as either:

1. Within 12 months of onset, there was or is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform basic work-related functions. (See SSR 82–55 (PPS–84: Medical Impairments That Are Not Severe)); or
2. Within 12 months of onset, there was or is expected to be sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in SGA, considering pertinent vocational factors.

In the latter case, a thorough documentation, evaluation, and rationalization of the claimant's RFC, work history, and vocational potential is necessary.

impairment that must last the required 12-month period. Id.; see also Barnhart v. Walton, 535 U.S. 212, 217–22 (2002) (upholding the SSA's requirement that the inability to work, not just the impairment upon which it is based, last twelve months). The ALJ did not deny Brockman's claim based on insufficient duration of an inability to engage in substantial gainful employment, but because he has the RFC to perform work. The ALJ was not required to present a rationale for not awarding a closed period of disability when she found that Brockman has no disabling condition.

Brockman further argues the ALJ erred in failing to include his diagnosis of bipolar disorder NOS as a severe impairment at Step 2 of the sequential evaluation (Doc. No. 19 at 11-12). The Commissioner responds that the omission of bipolar disorder from the list of severe mental impairments does not require remand because the ALJ clearly considered all of Brockman's mental impairments and found he had a number of limitations related to those impairments. (Doc. No. 24 at 4-5).

Courts frequently find that an ALJ's exclusion of a particular impairment as severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis. See Hankinson v. Colvin, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) ("[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis."); Givans v. Astrue, No. 4:10–CV–417–CDP, 2012 WL 1060123, at * 17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the RFC); see also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have

more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ clearly considered all of Brockman's mental limitations throughout her RFC analysis and specifically discussed Brockman's reported difficulty controlling his emotions, his anger and irritability towards others, as well as his prescription medication history. The ALJ also considered Brockman's subjective statements regarding his mental limitations and conducted a proper analysis of the credibility of those statements (discussed infra). The ALJ then accommodated those mental limitations she found credible by restricting Brockman to "simple, routine and repetitive tasks requiring no interaction with the public in performing job duties, occasional interaction with coworkers and supervisors, and occasional changes in the work setting." (Tr. 17). This analysis demonstrates that the ALJ adequately considered the limitations attributable to Brockman's bipolar disorder, whether or not she found his bipolar disorder to be a severe impairment. As such, any error at Step Two was harmless in this case.

**(2) Medical opinion evidence**

Next, Brockman argues the ALJ improperly assigned "great weight" to the opinion of State agency psychological consultant Dr. Stanley Hutson, Ph.D., and only "partial weight" to portions of the opinion of consultative examiner Dr. Laura Brenner, Ph.D. (Doc. No. 19 at 5-11). In determining whether the ALJ properly considered the medical opinion evidence, the Court's role is limited to reviewing whether substantial evidence supports this determination, and not deciding whether the evidence supports the claimant's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010); Brown v. Colvin, No. 4:13CV01693 SPM, 2014 WL

2894937, at *5 (E.D. Mo. June 26, 2014). When evaluating the opinion of a non-examining or consultative source, the ALJ must evaluate the degree to which the opinion considers all of the pertinent evidence, including opinions of treating and other examining sources. Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The opinions of non-examining or consultative sources do not, by themselves, constitute substantial evidence on the record as a whole, Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Wildman, 596 F.3d at 967, but may properly be considered along with the other evidence of record. See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."). Upon review of the record and the ALJ's reasoning, the Court finds the ALJ provided good reasons for the weight given to the opinions of Dr. Hutson and Dr. Brenner.

**a. Dr. Hutson**

On October 21, 2013, Dr. Hutson reviewed Brockman's application at the initial level, noting treatment for anxiety, depression, and bipolar disorder (Tr. 76-80, 86-90). Dr. Hutson referenced one psychiatric medical record[4] from September 12, 2013, wherein Brockman reported feeling better with Seroquel, denied alcohol or substance abuse, and was started on Lithium. (Tr. 77, 87). Dr. Hutson assessed Brockman with mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation.

---

[4] Dr. Hutson noted the limited medical evidence of record regarding Brockman's symptoms and mental disorders: "Brockman's treating physician Dr. [Agara] Reddy had been contacted on "9/23, 10/9, & 10/11 for complete medical records. Staff indicated that they were in process. Was informed 10/21 that the transcriptions had been 'lost', and that the doctor was in the process of reading through his notes. Staff had no idea when complete records would be available. Confirmed that the claimant has not been seen since 9/23." (Tr. 75). Nevertheless, Dr. Hutson indicated that further evaluation was not warranted since Brockman's "recent onset mental disorders are improving with treatment and do not cause mild to moderate limitations." (Tr. 77, 87).

(Tr. 76, 86). With respect to his mental RFC assessment, Dr. Hutson opined that Brockman had the ability to understand and remember instructions and work procedures, and can make simple work decisions and complete routine tasks. Given Brockman's social avoidance and short temper, Dr. Hutson opined he would benefit from limited social interaction in the work setting and appeared capable of adapting to a work setting that has few changes in routine and few social demands. (Tr. 80, 90).

The ALJ accorded great weight to Dr. Hutson's opinion because it was consistent with the entire record, including the treatment notes of Brockman's psychiatrist, Dr. Agara Reddy, M.D., and Brockman's reports of improvement with medication. In October 2013, Brockman reported that his medication helped him a lot with his mood and Dr. Reddy noted that Brockman's mood and affect were improving (Tr. 363). By December 2013, Brockman reported being "a lot less irritable, less moody, less impatient" (Tr. 364). Although Brockman reported problems in January 2014 after stopping one of his medications (Tr. 365), by February 2014, he was "doing better most of the time," and Dr. Reddy continued to report that Brockman's mood was improving. The ALJ further found Dr. Huston's opinion consistent with Dr. Brenner's objective mental status observations. As discussed below, in her December 2014 interview, Dr. Brenner observed Brockman to be polite, cooperative, and responsive to social conversation. Although she found Brockman's memory and concentration impaired, Dr. Brenner determined that his focus was adequate for the interview (Tr. 367). Moreover, as a State agency psychologist consultant, Dr. Hutson is considered to be a highly qualified expert in Social Security disability evaluation, and the ALJ properly considered his findings as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i); Lawrence v. Berryhill, No. 4:16CV1433 CDP, 2017 WL 3034698, at *7 (E.D. Mo. July 18, 2017).

**Dr. Brenner**

On December 3, 2014, Dr. Brenner conducted a psychological evaluation of Brockman based upon an interview and his medical records. (Tr. 367-73) She noted Brockman was alert and fully oriented (Tr. 367). He was polite, cooperative, and responsive to social conversation (Id.). His memory and concentration were impaired, but his focus was adequate for the interview (Id.). Dr. Brenner diagnosed Brockman with Schizoaffective Disorder, bipolar type, by record; Post-traumatic Stress Disorder (PTSD); chronic pain; severe childhood abuse, family conflict; GAF of 40. (Tr. 370). In her summary and content, Dr. Brenner reported that Brockman presented with significant difficulty controlling his emotions and has had difficulty keeping a job because of his volatility. She noted Brockman had recently been hospitalized with psychotic symptoms as well as a suicide attempt, and was likely at some increased risk of self-harm given his impulsive nature. Dr. Brenner opined that Brockman's main work impediment would be handling frustrations appropriately, noting that in the past he has gotten angry with a machine that was not working well and thrown tools and quit. He has also been prone to outbursts with coworkers and supervisors. She found his concentration was mildly impaired and opined that he would find detailed or complex tasks challenging for this reason. (Id.).

The ALJ gave "partial weight" to Dr. Laura Brenner's opinion to the extent it was consistent with the record, but did not give it additional weight because she did not treat Brockman, and because her opinion appeared largely based on his subjective allegations (Tr. 20-21). See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) ("The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight."); Papesh v. Colvin, 786 F.3d 1126, 1133 (8th Cir. 2013) ("[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources."). See also

12

Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (concluding the ALJ properly discounted a doctor's report, in part, because it "cited only limitations based on [the claimant's] subjective complaints, not his own objective findings"). The ALJ also noted inconsistencies between Dr. Brenner's "largely unremarkable" objective mental status observations and her conclusion that Brockman had "significant difficulty controlling his emotions" (Tr. 20-21).

It is the duty of the Commissioner to resolve conflicts in the medical opinion evidence, Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); and, when assessing a claimant's RFC, an ALJ need not credit the entirety of a medical opinion or directly correlate a medical opinion to the RFC. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on her review of the record as a whole. Here, the ALJ evaluated all of the medical opinion evidence of record and adequately explained her reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the ALJ's evaluation of the medical opinion evidence.

**(3) Credibility**

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Wright v. Colvin, 789 F.3d 847, 853-54 (8th Cir. 2015) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or

her conclusions. Id. (citing Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified a number of reasons for finding Brockman's statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible. First, the ALJ noted that no treating, reviewing, or examining physician opined that Brockman had the degree of functional limitation alleged, or that he was so functionally limited that he could not perform basic work tasks at any exertional level (Tr. 17-18). A psychiatric evaluation performed on August 1, 2013 by Dr. Reddy revealed mild-to-moderate symptomatology (Tr. 18, 290-91). Dr. Reddy found Brockman was alert and oriented in all spheres, with a moderately anxious affect, and moderately dysphoric mood (Tr. 290-91). His speech was "moderately pushed and tangential" (Id.). Dr. Reddy noted some paranoia, but there was no evidence of perceptual disturbances or suicidal or homicidal thoughts (Id.). Cognitively, Brockman appeared to be "intact" (Id.). The ALJ pointed out that these findings occurred in an untreated state (Tr. 18). Dr. Reddy diagnosed Brockman with bipolar disorder, NOS and anxiety disorder, NOS, and prescribed a trial of Seroquel (Tr. 291). Dr. Reddy also discussed with Brockman and his wife different psychiatric interventions from which he might benefit, including cognitive behavioral therapy and anger management. Brockman indicated he could not afford any interventions due to a lack of insurance (Id.).

During a follow up visit with Dr. Reddy on September 12, 2013, Brockman continued to report difficulty controlling his emotions and anger problems, but indicated that since he began Seroquel, his sleep had improved and he was "not so emotional and not so angry all the time" (Tr. 297). He strongly denied any suicidal or homicidal thoughts (Id.). Dr. Reddy started

Brockman on a trial of Lithium to help with his mood (Id.) On October 31, 2013, Brockman indicated that the Seroquel helped him with his mood swings, and that when he takes his medication, he can go out in social situations (Tr. 363). Dr. Reddy noted no evidence of active psychotic symptoms and continued him on his current dose of medications (Id.). He also talked with Brockman about anger management, but Brockman replied that his insurance did not cover it and he could not afford to go (Id.). By December 2013, Brockman reported improvement in his mood and affect (Tr. 301). Dr. Reddy increased his dosage of Lithium and continued Seroquel at bedtime (Id.). On January 9, 2014, Brockman reported ongoing moodiness and impatience. He stated he had stopped taking Lithium because he did not think it was helping and that Seroquel was the most helpful (Tr. 365). Brockman denied any hopelessness or suicidal thoughts (Id.) Dr. Reddy increased Brockman's dosage of Seroquel and again suggested anger management (Id.). Brockman expressed a willingness to try anger management (Id.).

On January 23, 2014, Brockman reported that while he was still experiencing mood swings, irritability and impatience, he was "getting better." (Tr. 303). Dr. Reddy started him on a trial of Tegretol to help his mood and talked with him about cognitive behavioral therapy and anger management. Brockman was not, however, interested. (Id.). During a follow up visit on February 6, 2014, Brockman told Dr. Reddy he was "doing better most of the time" (Tr. 366). Dr. Reddy also described Brockman's mood as "improving," with no manic or psychotic symptoms (Id.). Dr. Reddy encouraged Brockman to get involved with other activities and again suggested anger management, to which Brockman replied that he cannot be around too many people (Id.).

During a comprehensive clinical assessment conducted at Burrell Behavioral Health on May 28, 2014, Brockman was observed as alert (i.e., awake, fully aware, responsive), with no

difficulty attending to the examiner. His vigilance was within normal limits and he was not distractible. (Tr. 322-23). He appeared alert and oriented to person, place, time, and situation (Tr. 323). Although his mood was described as dysthymic and irritable, Brockman was otherwise cooperative, maintaining eye contact and interacting appropriately (Id.). He reported difficulty remembering dates, names of times, where he has placed objects in the home, and how to perform some tasks (Id.). When asked about his stated goals/preferences for treatment, Brockman replied, "I need to get my disability. I can't do it. I can't handle work." (Tr. 328).

Dr. Brenner's psychological evaluation of Brockman on December 3, 2014, likewise did not show marked symptomatology or limitations (Tr. 20). Dr. Brenner observed Brockman to be alert and fully-oriented and described him as "polite, cooperative, and responsive to social conversation" (Tr. 20, 367). His hygiene and grooming were intact, and he made good eye contact (Tr. 20, 367). Brockman's speech was logical and relevant with no tangents or loosening of associations (Tr. 20, 367). His insight was intact and judgment was not obviously impaired (Tr. 20, 367). Memory was mildly impaired in mental status screening. He recalled one of four words after a brief delay, two additional words with cuing, but did not recall the fourth word or recognize it in a multiple choice format. He was able to remember details of his personal history without obvious difficulty. Concentration was impaired when repeating digits forwards and backwards, but Brockman was able to focus adequately on Dr. Brenner's interview (Tr. 367).

The ALJ found these objective findings did not indicate additional limitations or that Brockman had anything other than mild-to-moderate impairment overall (Tr. 20). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011).

The ALJ also noted that Brockman repeatedly reported improvement with medication and that when medicated, had mild-to-moderate symptomology on exam (Tr. 20, 290-92, 297-98, 341, 362-66, 367-73). An impairment that can be controlled by treatment or medication, or is amenable to treatment, is not disabling. See Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005); Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir. 1998).

In assessing Brockman's credibility, the ALJ noted he had not attempted anger management therapy, despite Dr. Reddy's express recommendation (Tr. 20). The Court is aware that an ALJ may not draw any adverse inferences about a claimant's symptoms and their functional effects from a failure to pursue treatment without first considering whether the failure was caused by the claimant's inability to afford treatment or obtain access to free or low-cost medical services. See SSR 96-7p, 1996 WL 374186, at *7-8. The records show that Brockman indicated on several occasions that his insurance would not cover anger management therapy; however, there is no evidence he was ever denied treatment due to financial reasons. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (failure to take prescription pain medication was relevant to credibility determination where claimant said she could not afford treatment but there was no evidence she was ever denied medical treatment due to financial reasons); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (permissible for ALJ to consider lack of evidence that claimant sought out stronger pain treatment available to indigents for her allegedly debilitating headaches); Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) ("lack of insurance" did not excuse claimant's failure to pursue mental health treatment where no evidence that claimant was ever denied such treatment because of insufficient funds or insurance). Therefore, the ALJ properly considered Brockman's failure to follow through with his doctor's

recommended course of treatment in her credibility analysis. See Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) (adverse credibility finding supported by claimant's failure to attend recommended therapy appointments); Baker v. Barnhart, 457 F.3d 882, 893–94 & n. 7 (8th Cir. 2006) (claimant's decision not to undertake recommended physical therapy was valid factor in credibility determination); Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) (noncompliance with a physician's directions or prescribed treatment is a valid reason to discredit a claimant's subjective allegations); 20 C.F.R. § 404.1530(a-b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability).

The ALJ further noted that Brockman has received conservative care overall, consisting primarily of medication management – with the exception of one 3-day hospitalization[5] (Tr. 20). Allegations of a disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment. Barrett v. Shalala, 38 F.3d 1019, 1023-24 (8th Cir. 1994).

With respect to activities of daily living, Brockman testified he can prepare meals for himself, vacuum, wash dishes, dress and bath himself, do laundry, mow the lawn, take out the garbage and do some gardening. He visits with friends and is not bothered when his teenage child has friends over. The extent of Brockman's activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Chaney v. Colvin, 812 F.3d 672, 677 (8th Cir. 2016) (An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility.");

---

[5] Brockman was hospitalized on September 12, 2014, after overdosing on Xanax with suicidal intent. He was admitted to the mental health unit for psychiatric evaluation and medication adjustment. On September 15, 2014, Brockman requested to be discharged, denying suicidal or homicidal thoughts (Tr. 344-361). He followed up for out-patient care at Burrell Behavior Health (Tr. 339). There is no record of further incidents or hospitalizations.

18

Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)).

In sum, the ALJ discussed many of the Polaski factors in discounting Brockman's credibility. Because the ALJ's credibility findings are supported by good reasons and substantial evidence, the Court will defer to those findings. Nicholson v. Berryhill, No. 16-4180, 2017 WL 3568200, at *1 (8th Cir. Aug. 18, 2017) (citing Mabry v. Colvin, 815 F.3d 386, 389 (8th Cir. 2016)).

### (4) VE hypothetical

Lastly, Brockman argues the ALJ's hypothetical to the vocational expert (VE) failed to include any work-related limitations associated with conflict or handling frustrations appropriately (Doc. No. 19 at 14-15). In her hypothetical, the ALJ limited Brockman to simple, routine and repetitive tasks requiring no interaction with the public, occasional interaction with coworkers and supervisors, and only occasional changes in the work setting (Tr. 17). The Commissioner contends these limitations were intended to minimize the likelihood for frustrating situations. (Doc. No. 24 at 12)

"In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record." Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999). "'[T]he ALJ is only required to incorporate into the hypothetical those impairments and limitations which have been accepted as credible.'" Gorton v. Astrue, No. 06–CV–4903 (PJS/JSM), 2008 WL 583703, at *29 (D. Minn. Feb. 28, 2008) (quoting Daniel v. Barnhart, No. 01–CV–852 (JRT/ALB), 2002 WL 31045847, at *4 (D. Minn. Sept. 10, 2002)). The Court has already determined that the ALJ properly considered Brockman's severe impairments, evaluated the medical opinion evidence, and discounted his testimony in

determining the RFC. The ALJ included all the limitations she found credible and supported by the record in her hypothetical, making her hypothetical proper. See <u>Stout v. Shalala</u>, 988 F.2d 853, 855 (8th Cir. 1993); <u>Webb v. Colvin</u>, No. CIV. 13-1491 DWF/SER, 2014 WL 4668974, at *35 (D. Minn. Sept. 18, 2014).

## V.     Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.


Dated this 29th day of September, 2017.

*[signature: John A. Ross]*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**